**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| ROSALIE ZAVALA, ) | No. CV 04-1002 (CW) |
| Plaintiff, ) | DECISION AND ORDER |
| v. ) | |
| JO ANNE B. BARNHART, ) Commissioner, Social Security ) Administration, ) | |
| Defendant. ) | |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned Magistrate Judge. Plaintiff seeks review of the Commissioner's denial of disability benefits. As discussed below, the court finds that the Commissioner's decision should be reversed and this matter remanded for further proceedings.

**I. BACKGROUND**

Plaintiff Rosalie Zavala was born on March 28, 1958 and was forty-four years old at the time of her administrative hearing. [AR 37.] She has a high school education and past relevant work experience as a clerical worker. [AR 16.] Plaintiff alleges

1

disability on the basis of problems status post bilateral mastectomies, chronic upper body pain, anxiety and depression. [AR 16.]

## II. PROCEEDINGS IN THIS COURT

Plaintiff's complaint was filed on February 13, 2004. On August 10, 2004, defendant filed plaintiff's Administrative Record ("AR"). On October 27, 2004, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party. This matter has been taken under submission without oral argument.

## III. PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for disability insurance benefits ("DIB") on December 4, 2001, alleging disability since January 10, 2001. [JS 1-2.] An administrative hearing was held on January 13, 2003, before Administrative Law Judge ("ALJ") Sherwin F. Biesman. [Transcript, AR 37.] Plaintiff appeared with counsel, and testimony was taken from plaintiff. [AR 36.] The ALJ denied benefits on February 13, 2003. [Decision, AR 19.] When the Appeals Council denied review on December 12, 2003, the ALJ's decision became the Commissioner's final decision. [AR 4.]

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence. However, if the court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits. See Aukland

v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

## V.  DISCUSSION

### A.  THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not

      disabled is appropriate.
          Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
          Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
          Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920. If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps. Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

    Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel. Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288. If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age, education, and work experience, a claimant can perform other work

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989). Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c). Pain may be either an exertional or a nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

which is available in significant numbers.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

### B. THE ALJ'S EVALUATION IN PLAINTIFF'S CASE

Here, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 10, 2001 (step one), that plaintiff had "severe" impairments, namely problems status post bilateral mastectomies, chronic upper body pain, anxiety and depression (step two), and that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 16, 18.]  The ALJ found that plaintiff had the RFC to perform light exertional activity, including her past relevant work as a clerical worker (step four). [AR 17-18.]  Thus, the ALJ found that plaintiff was not "disabled" as defined by the Social Security Act. [AR 19.]

### C. PLAINTIFF'S PRESENT CLAIMS

Plaintiff raises multiple claims challenging the ALJ's decision, including that the ALJ incorrectly assessed plaintiff's RFC and improperly evaluated her credibility. [JS 7.]  As discussed below, these claims have merit and warrant reversal and remand for further proceedings.[2]

---

[2] Plaintiff further argues that she has significant mental impairments that prevent her from performing her past relevant work. [JS 6, 8, 18.]  Although plaintiff has no history of psychiatric treatment, she was examined by Dr. Ernest Bagner, who opined that plaintiff would have no limitations completing simple tasks, mild limitations interacting with others, mild limitations maintaining concentration and attention and completing a normal workweek without interruption, and "mild to moderate" limitations handling normal stresses at work. [AR 119-122.]  Plaintiff argues that this latter limitation is significant. [JS 8.]  However, given the totality of the evidence regarding plaintiff's alleged mental impairments, as well as the fact that Dr. Bagner assessed plaintiff with a Global Assessment of Functioning ("GAF") score of 67 (which is indicative of only mild

**D.   THE ALJ'S ASSESSMENT OF PLAINTIFF'S RFC TO FIND THAT SHE COULD PERFORM HER PAST RELEVANT WORK**

In making the step four determination of whether a claimant has the ability to meet the demands of her past relevant work, the ALJ must first evaluate the claimant's RFC, and then carefully examine the physical and mental demands of the claimant's past work. 20 C.F.R. §404.1520(e); Social Security Rulings ("SSR") 86-8; SSR 82-62. See Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001); Villa v. Heckler, 797 F.2d 794, 798-98 (9th Cir. 1986).

Here, the record shows that the ALJ conducted the step-four analysis by agreeing with the findings of a state agency review physician[3] that plaintiff had the RFC for light exertional activity. [AR 17.] The state agency review physician opined plaintiff had the ability to lift 10 pounds frequently and 20 pounds occasionally, as well as sit, stand and/or walk for six hours out of an eight-hour workday. [AR 109.] The ALJ concluded that based on this RFC, plaintiff could return to her past relevant work as a clerical worker, which is classified in the Dictionary of Occupational Titles ("DOT")

---

impairment in social and occupational functioning), the ALJ properly concluded that plaintiff's alleged mental impairments would not prevent her from functioning independently outside her home. [AR 17.] See, e.g., Truitt v. Commissioner of the Soc. Sec. Admin., 45 F.Supp.2d 812, 816 (D.Or. 1999)(holding that a GAF score of 65 is "well within the range of employability.")

[3] In determining plaintiff's RFC, the ALJ rejected the opinion of plaintiff's treating physician, Dr. Natalie Matsuno. The ALJ found that Dr. Matsuno, though designated as plaintiff's treating physician, saw plaintiff only twice and, thus, did not develop a bonafide treating relationship with plaintiff. [AR 16.] The ALJ also found that Dr. Matsuno's assessment of restrictive functional limitations for plaintiff was conclusory and lacked clinical correlation or elaboration. [Id.]

as requiring no more than a light exertional capacity.[4] [AR 17.]

The ALJ did not appear to take into account, however, that the state agency review physician also assessed plaintiff with limitations in pushing and pulling by the upper extremities and occasional limitations in reaching in all directions (including overhead). [AR 109, 111.] If the ALJ had taken these limitations into account, he would not have been able to find, as he did, that plaintiff could perform the job of a "Clerk, General" as it is defined by the DOT, because that job entails pushing and pulling of arm or leg controls, possibly at a constant pace.[5] [AR 17.] Defendant argues that it was within the ALJ's prerogative to reject certain aspects of the state agency review physician's assessment, such as the specific limitations on pushing, pulling and reaching, but this is difficult to reconcile with the ALJ's blanket statement that he "concurs" with the findings of the state agency review physician. [JS 13, AR 17.] The ALJ's statement of agreement with the state agency review physician must be taken at face value, given that there is nothing to suggest the contrary. Because the ALJ's reliance on the DOT job description fails to comport with plaintiff's limitations as noted by the state agency review physician, the ALJ must definitively explain the deviation. See Pinto, 249 F.3d at 847 (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)). Accordingly, remand for a new step-four

---

[4] U.S. Dep't of Labor, Dictionary of Occupational Titles ("DOT"), No. 209.562-010 (4th ed. 1991).

[5] The government classifies the occupation of "Clerk, General" as requiring strength for "light work," which requires, in part, "pushing and/or pulling of arm or leg controls, and/or working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." U.S. Dep't of Labor, DOT, No. 209.562-010 (4th ed. 1991).

7

analysis is necessary.[6]

### E.  THE ALJ'S ASSESSMENT OF PLAINTIFF'S CREDIBILITY

Although an ALJ is responsible for determining a claimant's credibility, an ALJ may not reject a claimant's testimony without providing "clear and convincing reasons." Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  An ALJ must "specifically identify" the testimony found not credible and "explain what evidence undermines the testimony," and the evidence on which the ALJ relies must be "substantial."  Holohan, 246 F.3d at 1208; see also Tonapetyan, 242 F.3d at 1148 ("The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements."); Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004)(quoting Rollins v. Massanari, 261 F.3d 853, 856-857 (9th Cir. 2001)).

Here, plaintiff testified at the administrative hearing that "I suffer with chronic pain" and that "I wasn't holding a job because of it." [AR 38.]  She also testified that she regularly attends a pain management clinic, takes Vicodin and a morphine patch, and has to lie

---

[6] Plaintiff further argues that the testimony of a vocational expert ("VE") was necessary to determine, at step four, the effect that plaintiff's non-exertional limitations had on her ability to perform her past relevant work. [JS 8, 16-17.]  VE testimony is not required, if at all, until step five of the sequential evaluation. See, e.g., Matthews v. Shalala, 10 F.3d 678, 781 (9th Cir. 1993).  It may nonetheless be helpful in this case for the ALJ to use a VE to determine the exertional and non-exertional requirements of plaintiff's past relevant work.

down three to four times per day. [AR 39-41.]  Plaintiff summarized her daily activities as including driving with difficulty, cooking "sometimes," and grooming herself. [AR 42-43.]

The ALJ found plaintiff's allegations of pain not entirely credible, citing a lack of objective medical evidence to corroborate her symptoms. [AR 17.]  The ALJ also found that there was "no indication that [plaintiff] has used any medications or undergone any treatment which has not provided some relief, and no indication that there are any concomitant debilitating side effects which are ongoing or untreatable in nature." [Id.]  In addition, the ALJ stated that "there is no evidence that [plaintiff] has sought alternative treatment measures on any ongoing and significant basis which have not brought any appreciable improvement in condition." [Id.]  Finally, the ALJ noted that plaintiff does not use an assistive device to walk and that her daily activities (as described by plaintiff's testimony and a pain questionnaire), which included "light housekeeping, cooking, attending to her personal hygiene, managing finances, reading, driving an automobile, running errands, and shopping for groceries," did not support plaintiff's claims of pain. [Id.]

These reasons were not sufficiently "clear and convincing" to support the ALJ's rejection of plaintiff's testimony regarding her subjective symptoms.  The ALJ's opinion that "the record contains no objective evidence to substantiate [plaintiff's] allegations of disability" is belied by the record.  Plaintiff underwent bilateral mastectomies with multiple reconstructions in 1993 and has reported recurrent shoulder and chest pain ever since. [AR 102, 151.]  She was diagnosed with a right shoulder impingement, cervical radiculopathy and right carpal tunnel syndrome and referred to physical therapy. [AR

9

156, 158.] The record shows that over a three-year period, plaintiff visited a pain management clinic thirty-one times. [AR 146-184.] The law is well-settled in the Ninth Circuit that, once a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to cause some level of pain of the type which the claimant alleges, the claimant's subjective complaints regarding the severity of her pain may not be discredited based solely on a lack of objective medical evidence to corroborate the allegations. <u>Smolen</u>, 80 F.3d at 1281-1282; <u>Bunnell</u>, 947 F.2d at 345; <u>Fair v. Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1989). Given that plaintiff has produced objective medical evidence of an underlying impairment that could reasonably be expected to cause some level of pain, the ALJ improperly rejected her allegations about the severity of her pain for lack of objective medical evidence.

In addition, despite the ALJ's conclusion that plaintiff's medication provided at least "some relief," the record does not support the implication that plaintiff's pain was controlled by medication. Although plaintiff was taking Vicodin and a morphine patch, she testified that the pain does not go away completely. [AR 41.] She also told her doctors at the pain management clinic that the Vicodin was "helping less and less," and a few days later, she complained that the pain was deepening. [AR 169, 170.] Neither does the record support the ALJ's inference that the absence of debilitating side effects somehow impugned plaintiff's credibility. Plaintiff testified that her medications caused her to have concentration problems, dry mouth and an upset stomach, but she did not claim that these side effects were debilitating. [AR 43.] In addition, contrary to the findings of the ALJ, the "alternative

treatment measures" sought by the plaintiff did not bring an "appreciable improvement in condition." The records of plaintiff's most recent treatments at the pain management clinic at Kaiser Permanente showed that plaintiff, after approximately thirty treatment sessions, still complained of pain in her back and left flank. [AR 175, 177, 183.]

Furthermore, the fact that plaintiff does not use an assistive device to walk is not significant because plaintiff complains primarily of pain in her upper body. [AR 38.] In addition, the ALJ's characterization of plaintiff's daily activities are not clear and convincing reasons to discredit her testimony. The fact that plaintiff performs light housekeeping, cooking, grocery shopping, driving, and other domestic chores does not necessarily discredit her claims of pain. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)(plaintiff's daily activities, such as grocery shopping, driving a car, or limited walking for exercise, did not in any way detract from her credibility as to her overall disability). The record does not indicate that plaintiff spends a substantial part of her day performing these activities, nor that the activities are transferable to a work setting. Id. at 1049. Thus, the ALJ's recitation of plaintiff's daily activities was an improper basis to reject plaintiff's credibility.

Because the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's testimony, it is credited as true. Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir., 2004). Even if plaintiff's testimony is credited as true, however, it is not sufficiently specific about her functional limitations to determine whether she retains the RFC to perform her past relevant work or other work in the

national economy.  For example, plaintiff testified that she stopped working because "I suffer with chronic pain." [AR 38.]  This is not precise enough to define the limits of plaintiff's RFC.  Accordingly, remand for further proceedings is required.

**F.  THE ALJ'S DUTY TO DEVELOP THE RECORD REGARDING PLAINTIFF'S OBESITY**

An ALJ has an affirmative duty to develop the record, even if the claimant is represented by counsel.  See <u>Armstrong v. Commissioner of Social Security Administration</u>, 160 F.3d 587, 589 (9th Cir. 1998); <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1993).  This includes, inter alia, the duty to compile all of the relevant facts upon which an ultimate adjudication of disability ultimately rests.  See <u>Miles v. Chater</u>, 84 F.3d 1397, 1401 (2d Cir. 1996)(The ALJ is required to develop a full and fair record, giving individualized consideration to each claim).

Here, the record shows that plaintiff would be considered obese.  She reported that she is five foot, four inches tall and weighs 260 pounds. [AR 67.]  Dr. Ernest Bagner, the examining psychiatrist, remarked that plaintiff was "markedly obese" and that she had "gained 100 lbs. over the past seven years." [AR 119.]  Plaintiff's treatment records at Kaiser Permanente make multiple references to her obesity. [AR 160, 167, 183.]  Despite this evidence, the ALJ made no mention of plaintiff's obesity.

Although obesity is not a "listed" impairment, an ALJ must nonetheless determine the effect of a claimant's obesity upon her other impairments, her ability to work, and her general health.  <u>Stack v. Barnhart</u>, 327 F.Supp.2d 1175, 1178 (9th Cir. 2004)(citing <u>Celaya v. Halter</u>, 332 F.3d 1177, 1182 (9th Cir. 2002)).  This obligation to

develop the record applies even when the plaintiff does not specifically allege obesity. Id. Here, plaintiff does not allege obesity, but it is not farfetched to suppose that obesity could play a role in plaintiff's back pain and limited mobility in her upper body. Thus, upon remand, the ALJ should consider plaintiff's obesity and its interactive effect on her other impairments.

### G. REMAND FOR FURTHER PROCEEDINGS

The decision whether to remand for further proceedings is within the discretion of the district court. Harman v. Apfel, 211 F.3d 1172, 1175-1178 (9th Cir. 2000). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Harman, 211 F.3d at 1179 (decision whether to remand for further proceedings turns upon their likely utility). However, where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. Id.

Here, there are outstanding issues to be resolved before a finding of disability can be made. Factual issues regarding the exertional and non-exertional requirements of plaintiff's past relevant work, as well as the effect of her obesity, need to be resolved. Accordingly, remand for further proceedings is appropriate.

## VI. ORDERS

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **REVERSED**.

2. This action is **REMANDED** to defendant, pursuant to Sentence Four of 42 U.S.C. § 405(g), for further proceedings as discussed above.

3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED: November 29, 2005

```
         ____/s/_____
              CARLA M. WOEHRLE
              United States Magistrate Judge
```